IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CRIS A. GRESHAM                                                        PLAINTIFF

v.                      Civil No. 04-3070

JO ANNE B. BARNHART, Commissioner,
Social Security Administration                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Cris A. Gresham brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act and her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**Procedural Background:**

On January 17, 2003, Gresham filed applications for DIB and SSI benefits. (Tr. 117-119, 310). Gresham initially alleged an inability to work since May 1, 2002, due to seronegative arthritis with pain in all of her joints. (Tr. 18-19, 117, 310). The alleged onset date was later amended to January 14, 2003. (Tr. 48).

An administrative hearing was held on December 5, 2003 (Tr. 32-88). Gresham appeared and testified. (Tr. 38-69). Tanya Owen, a vocational expert (Tr. 73-86), Gresham's husband, Frank Gresham (Tr. 69-71), her daughter, Charlotte Grant (Tr. 71-72), and her mother-in-law, Jean Gresham (Tr. 72-73), were also called to testify. Gresham was represented by counsel. (Tr. 34).

By written decision dated May 25, 2004, the administrative law judge (ALJ) found Gresham not disabled within the meaning of the Social Security Act. (Tr. 18-29). The ALJ noted the objective medical evidence showed Gresham had polyarthritis and/or fibromyalgia with chronic pain and that she had a partial restriction of motion in her cervical spine and was status-post cervical fusion. (Tr. 20). He concluded she had a severe impairment but her impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation 4. (Tr. 20).

The ALJ found Gresham retained the residual functional capacity (RFC) to engage in light work, *i.e.*, lift and/or carry 20 pounds occasionally and 10 pounds frequently, push and/or pull within those limitations, stand and/or walk up to six hours of an eight-hour workday and sit up to six hours of an eight-hour workday. (Tr. 24). He found she could only occasionally crouch, kneel, crawl, climb stairs, finger and reach overhead. (Tr. 25). Finally, the ALJ concluded Gresham was restricted from using ladders, ropes or scaffolds and must have the option to sit or stand. (Tr. 25).

The ALJ concluded Gresham was unable to perform her past relevant work as a poultry eviscerator/hanger, a fast food manager, a laundry worker and a veterinarian technician. (Tr. 25-26). The ALJ concluded Gresham was able to perform a significant range of light work. (Tr. 26). With the help of the testimony of a vocational expert, the ALJ found Gresham would be able to perform other work as a inventory clerk and food counter fast food worker. (Tr. 26).

Plaintiff appealed the decision of the ALJ to the Appeals Council. (Tr. 10). After considering additional medical evidence submitted by the plaintiff, her request for review was

AO72A
(Rev. 8/82)

denied on September 10, 2004. (Tr. 6-8). When the Appeals Council declined review, the decision of the ALJ became the final decision of the Commissioner. (Tr. 6-8).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**Discussion:**

In this case, plaintiff argues that the ALJ erred in a number of respects. Because of these errors, Gresham contends this case warrants remand for a correct analysis. We agree remand is necessary.

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584,

591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the medical evidence reveals plaintiff has sought treatment for pain and swelling in her joints, particularly in her hands, and was eventually diagnosed with seronegative arthritis. (Tr. 199). She was referred to a rheumatologist, Dr. Thomas Dykman, in September of 2002 and he concluded she had polyarthritis likely due to early seronegative rheumatoid arthritis. (Tr. 228). Gresham has tried a variety of medications and her pain medication has been increased. (Tr. 221).

On October 24, 2003, Dr. Dykman completed a physical residual functional capacity questionnaire. (Tr. 291-294). He listed his diagnoses as fibromyalgia and polyarthritis. (Tr. 291). Dr. Dykman indicated pain or other symptoms would frequently be severe enough to interfere with Gresham's attention and concentration. (Tr. 292). He stated she was incapable of even low stress jobs because it could aggravate the pain. (Tr. 292). He indicated she could walk for less than a city block without rest or severe pain, only sit for fifteen minutes at a time,

and only stand for fifteen minutes at a time. (Tr. 292). He stated Gresham could sit, stand, and walk less than two hours in a working day. (Tr. 293).

Dr. Dykman indicated she would frequently need to walk around during the day, would have to shift positions and would need to take unscheduled breaks. (Tr. 293). He stated she could only rarely lift ten pounds and never lift twenty or fifty pounds. (Tr. 293). He stated she could never look down (sustained flexion of neck), turn her head right or left, look up, and only rarely could hold her head in a static position. (Tr. 293). He stated she could never twist, stoop, crouch, climb ladders, or climb stairs. (Tr. 294). He stated she would have significant limitations in reaching, handling, or fingering. (Tr. 294). He also stated she would on the average be absent from work because of her impairments more than four days per month. (Tr. 294).

On February 16, 2004, Dr. Leonard, a rheumatologist, performed a consultative examination. (Tr. 305-306). Upon examination he noted: limited motion in Gresham's cervical spine with muscle spasm, crepitus, and popping with full extension; synovitis of the PIP and MC finger joints of both hands and the right wrist; fist grasps were 1/2 normal on the right side and 1/3 normal on the left; lumbar flexion was restricted without muscle spasm or palpable tenderness; crepitus and discomfort with flexion of both knees and loss of extension on the right by 20 degrees; and palpable tender synovitis of the MP joints of the feet. (Tr. 306). His diagnostic impressions were: inflammatory polyarthritis and status-post cervical diskectomy and fusion with partial restriction of motion. (Tr. 306).

AO72A
(Rev. 8/82)

On March 4, 2004, Dr. Leonard completed an addendum to his examination. (Tr. 307). He noted Gresham had a "highly abnormal physical examination." (Tr. 307). He states "[s]he will never be able to hold down gainful employment." (Tr. 307).

Dr. Leonard also completed a medical assessment of ability to perform work-related activities. (Tr. 309). He stated Gresham could never lift or carry, and could sit, stand, or walk only one hour in an eight hour work day. (Tr. 309). He stated she could never use her hands/feet/arms to grasp, do fine manipulation, handle objects, feel objects, push/pull/operate controls, or reach. (Tr. 309). He stated she could never climb, balance, stoop, crouch, kneel or crawl. (Tr. 309).

The ALJ discounted Dr. Dykman's responses to the RFC questionnaire because he indicated his diagnoses were based on tenderness over trigger points. (Tr. 25). The ALJ stated there were no significant clinical findings and laboratory abnormalities to support the limitations on plaintiff's abilities. (Tr. 25). The ALJ also discounted Dr. Leonard's assessment on the basis that the doctor's own report failed to "reveal the significant clinical and laboratory abnormalities one would expect if the claimant's abilities were that limited." (Tr. 25). Further, the ALJ noted Dr. Leonard erred when he referred to Gresham's dominant side as being her right when she had testified she was left-handed. (Tr. 25).

The ALJ, in concluding that plaintiff could perform the exertional and non-exertional requirements of a significant range of light work, relied on the exertional limitations set forth in a RFC assessment completed by a non-examining, medical consultants, indicating plaintiff could perform light work. (Tr. 239-246). The ALJ added to this assessment postural and manipulative limitations set forth in his RFC.

We note that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). This consultant did not have the benefit of reviewing Dr. Leonard's findings that plaintiff had limited range of motion in her spine and decreased grasp in her hands. (Tr. 305-306). Based on the all the medical evidence of record, we do not find substantial evidence to support the ALJ's RFC determination.

The undersigned also notes the ALJ relied on a disability supplemental interview outline completed by the plaintiff on January 24, 2003. (Tr. 156-160). He stated she engaged in significant activities and had not quit any of her normal activities. (Tr. 21). The ALJ failed to note, among other things, that Gresham reported: various tasks were too hard on her hands (Tr. 156); it took her longer to prepare meals since her disability began (Tr. 157); she was unable to drive because of the pain (Tr. 157); she had not been able to do her job (Tr. 157); she suffered from unusual fatigue (Tr. 158); she had shooting and intense pain in both hands making it hard to do anything (Tr. 158); and her pain interfered with her sleep (Tr. 158).

The ALJ also failed to discuss the significant differences between Gresham's responses to the questions on the outline she completed in January and her responses to the supplemental interview outline she completed on April 1, 2003. (Tr. 165-169). In the second outline, Gresham, among other things, stated: she could do some household chores but it took longer to do these things and she could only do a little at a time (Tr. 165); her husband had to do the chores and if she went along it caused her to be worse for several days (Tr. 165); she could not walk for exercise or errands because her ankles hurt all the way to her knees (Tr. 166); and she stayed at home most of the time, cleaned a little, and mostly watched TV or read (Tr. 168).

AO72A
(Rev. 8/82)

We also believe the ALJ failed to properly evaluate Gresham's allegations of disabling pain. In evaluating a claimant's allegations, the ALJ must consider the objective medical evidence; the claimant's prior work history; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness and side effects of medications; precipitating and aggravating facts; and functional restrictions. *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)(*citing Polaski v. Heckler*, 739 F.2d1320, 1322 (8th Cir. 1984)). Here, the ALJ carefully reviewed the medical records and summarized Gresham's testimony at the hearing, the ALJ then, virtually without discussion, found Gresham's complaints of disabling pain not to be fully credible.

Gresham testified she could not stand, walk, or sit very long and has trouble balancing herself. (Tr. 59-61). She testified she spends her days laying on the couch and can do virtually nothing physical. (Tr. 53, 63-64).

We note that Gresham has been persistent in seeking medical treatment for her seronegative arthritis and accompanying pain. Her persistence supports her credibility. *See e.g., O'Donnell v. Barnhart*, 318 F.3d 811, 817 (8th Cir. 2003).

She has sought treatment for joint pain caused by the seronegative arthritis over a significant period of time. She has tried a variety of medications and has been compliant with the suggestions made by her physicians. The Eighth Circuit has stated that "consistent diagnosis of chronic . . . pain, coupled with a long history of pain management and drug therapy," is an "objective medical fact" supporting allegations of disabling pain. *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998). While the ALJ mentioned the medications Gresham has been prescribed at various times in reviewing the medical records, there was no discussion of her daily use of

AO72A
(Rev. 8/82)

pain medication (Tr. 51--Hydrocodone, two pills, four times a day) in evaluating her allegations of disabling pain or any discussion on how the side effects from the pain medication or other prescribed medication could impact her ability to do work related activities.

Gresham's testimony regarding her limited daily activities was supported by the testimony of her husband and daughter. However, the ALJ discounted this testimony largely because of the husband's financial interest and because the testimony was brief and cumulative of that of Gresham (Tr. 24). *Cf. Neely v. Shalala*, 997 F.2d 437, 441 (8th Cir. 1993)(noting ALJ improperly discounted claimant's spouse testimony of limited daily activity solely because it might be influenced by sympathy for claimant).

Despite the repeated references to pain and Gresham's daily use of pain medication, pain was not incorporated into the hypothetical questions submitted to the vocational expert. There was no mention of whether the pain would impact Gresham's ability to do work-related activities. We believe remand is warranted so that the ALJ can more fully and fairly develop the record. On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff–including, Drs. Malone and Dykman–asking the physicians to review plaintiff's medical records; to complete a RFC assessment regarding plaintiff's capabilities during the time period in question, and to give the objective basis for their opinions so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). Further, the record needs to be developed with respect to any side effects from the prescription

AO72A
(Rev. 8/82)

medication Gresham is on, in particular the pain medication, and her allegations of disabling pain.

The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan,* 932 F.2d 1234, 1239 (8th Cir. 1991).

**Conclusion:**

Based on the foregoing, we hereby reverse the decision of the ALJ and remand this case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of September 2005.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)